CYRILLE FORTIER, *Adm'r v.* CONCORD ELECTRIC COMPANY.

*Robert W. Upton* and *Laurence I. Duncan* (*Mr. Duncan* orally), for the plaintiff.

*Demond, Sulloway, Piper & Jones* (*Mr. Jones* orally), for the defendant.

BRANCH, J. The plaintiff, having declined the compensation provided by the statute (R. L., c. 216, s. 20), this case is governed by the rules of the common law.

The deceased was an experienced lineman. He had been employed by the defendant as such for a period of one year and three months, a period much longer than that held to be sufficient to charge the plaintiffs with knowledge of the dangers of their employments in *Collins* v. *Company*, 68 N. H. 196 (nearly a year), and *Burnham* v. *Railroad*, 68 N. H. 567 (two months). The contention underlying much of the plaintiff's argument that the deceased was entitled to special protection upon the ground of inexperience, is definitely rejected.

Under these circumstances the doctrine of assumption of risk, with its corollaries, furnishes a complete answer to the plaintiff's claim. It is familiar law "that the servant assumes the risk of injury from the perils ordinarily incident to his service." *Burnham* v. *Railroad*, 68 N. H. 567, and cases cited; 3 Labatt, M & S, ss. 1167–1177. "The resulting situation, when considered from the standpoint of the master's duty, is that he is under no obligation to provide against the ordinary risks incident to the performance of the contract of service." 3 Labatt, M & S, s. 1167. As stated in the plaintiff's brief, "Treated poles had been increasingly used by the defendant about Concord for some ten years," following the chestnut blight which occurred about 1923, and this enforced use of a substitute for chestnut poles, properly treated to resist moisture, cannot be regarded as negligent. It must, accordingly, be held that, during this ten-year period, any additional risk of injury inherent in the nature of the treated poles had become one of "the perils ordinarily incident to" the work of a lineman, about which the deceased knew or ought to have known and against which the employer was under no obligation to provide safeguards.

The argument that the plaintiff was chargeable only with the knowledge of those risks about which he was shown to have received specific instructions cannot be adopted.

This conclusion is corroborated by the testimony of the plaintiff's witness Howe, a former lineman of the defendant, who testified as follows: "Q. Did it become a matter of general knowledge among the linemen that these poles were a little touchy? A. Yes. *Mr. Upton:* The linemen with whom he worked? *Mr. Jones:* Any linemen that worked for the company. *Witness:* The fellows I worked with out of the Penacook station knew it. Q. A matter of

common knowledge with them? A. Yes." The burden of proving that "the special danger causing the injury was not known to" the deceased "and in the exercise of ordinary care by him would not have come to his knowledge," rested upon the plaintiff (*Burnham* v. *Railroad, supra*), and there was no evidence to justify the conclusion that the deceased did not know as much about the characteristics of treated poles as the linemen working "out of the Penacook station."

The foregoing conclusions are also fatal to the further argument of the plaintiff that "it could be found that the defendant was negligent not only in failing to warn its employees, but also in failing to promulgate reasonable rules requiring them to take suitable precautions against electrocution while working on creosote-treated poles." As stated by Labatt: "An employee assumes, as an incident of his service, any risks which arise from the permanent, visible conditions of his master's plant." 3 Labatt, M & S, *s.* 1172.

This argument also ignores the testimony of all the plaintiff's witnesses who were asked about it, that on an open pole like the one in question, there was no necessity for any special protection except rubber gloves.

*Judgment for the defendant.*

PAGE, J., did not sit: the others concurred.